IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| JAMES BOWMAN, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 09-1322 |
| | : | |
| v. | : | |
| | : | |
| CORPORAL ROBERT F. REILLY, | : | |
| et al., | : | |
| | : | |
| Defendants. | : | |

**OPINION AND ORDER**

Slomsky, J.                                                                                    March 4, 2010

## I. INTRODUCTION

Before the Court is Defendant's Motion for Summary Judgment Pursuant to Fed. Rule

Civ. P. 56. (Doc. No. 16). Plaintiff James Bowman (hereinafter "Plaintiff") commenced this

action on March 27, 2009 against the Pennsylvania State Police (hereinafter "Defendant PSP")

and Pennsylvania State Police Officer Corporal Robert F. Reilly (hereinafter "Defendant" or

"Defendant Reilly"). (Pl. Compl., Doc. No. 1 (hereinafter "Doc. No. 1")). Plaintiff alleges in

his Complaint that Defendant Reilly violated his constitutional rights as guaranteed by the

Fourth and Fourteenth Amendments by using unreasonable and excessive force when he shot

Plaintiff in the neck while effectuating a lawful arrest following a traffic stop, and that

Defendant PSP contributed to the constitutional violation through its policies and failure to

properly train Defendant Reilly. (Doc. No. 1, at 4, ¶¶ 15–24).

In Count I of the Complaint, Plaintiff alleges that Defendant Reilly's conduct constitutes

unreasonable use of excessive force and that Defendant PSP's policies and failure to train

Defendant Reilly contributed to the excessive use of force, all in violation of the Fourth and

Fourteenth Amendments and 42 U.S.C. § 1983. (Doc. No. 1, at 6, ¶ 24). In Counts II-IV, Plaintiff alleges that Defendants committed supplemental state tort violations, including Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, and Assault and Battery. (Doc. No. 1, at 8, ¶27; 9, ¶30; 11, ¶ 34).

On April 30, 2009, Defendants filed a Motion to Dismiss all counts pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Hereinafter "Doc. No. 2"). In their motion, Defendants argued Plaintiff's § 1983 claims were barred by the Eleventh Amendment. (Doc. No. 2, at 4–6 ). Defendants also argued that Plaintiff's state law tort claims were barred by the doctrine of sovereign immunity. (Id., at 7–6).

Plaintiff filed a Response to the Motion to Dismiss in which he agreed to withdraw his § 1983 claim against Defendant PSP and against Defendant Reilly in his official capacity, but maintained his federal claim against Defendant Reilly in his individual capacity and his state tort claims. (Resp. To Mot., Doc. No. 5, at 4–5 (hereinafter "Doc. No. 5")). On June, 10, 2009, this Court granted the Motion to Dismiss the state tort claims against Defendant PSP, and denied the Motion as to the § 1983 claim against Defendant Reilly in his individual capacity and as to the state tort claims made against him. (Order, Doc. No. 7, at 4–5). Consequently, the only remaining claims against Defendant Reilly are the § 1983 claim in his individual capacity and the state tort claims.

On December 21, 2009, Defendant filed the Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 (Doc. No. 16), an accompanying Memorandum of Law (hereinafter "Doc. No. 16-1"), and a Statement of Undisputed Facts (hereinafter "Doc. No. 16-2"). On January 20, 2010, Plaintiff filed an Answer opposing Summary Judgment (hereinafter "Doc. No. 20") and an

Answer to Defendant's Statement of Undisputed Facts (Doc. No. 21). On January 21, 2010, Defendant filed a Reply to Plaintiff's Answer. (Hereinafter "Doc. No. 22"). A hearing on the Motion was held on February 9, 2010.

In the Motion for Summary Judgment, Defendant asserts that when all factual disputes are resolved in favor of Plaintiff, Defendant Reilly's use of force was objectively reasonable, and Plaintiff's claim for excessive force under 42 U.S.C. § 1983 should fail. (Doc. No. 16-1, at 3-10). Defendant also contends that even if Defendant Reilly's use of force is found to be unreasonable, Defendant is entitled to qualified immunity. (Id. at 10-13). Finally, Defendant asserts that he is entitled to sovereign immunity on the state tort claims, because he was acting within the scope of his duties at the time of the shooting. (Id. at 13-21). For the following reasons, Defendant's Motion for Summary Judgment will be denied in its entirety.

## II. SUMMARY OF THE FACTS

On April 2, 2007, at around 1:30 a.m., Plaintiff was driving home from the movies, after he had smoked marijuana. (Doc. No. 16, Ex. 1, Bowman Dep. 15:15-22, 31:17-19 (hereinafter "Bowman Dep.")) His girlfriend followed him in a separate car. Id. at 15: 15-22.) Plaintiff was not violating any traffic laws. He was driving below the speed limit and using his turn signals appropriately. (Id. at 72:4-9; Doc. No. 16, Ex. 2, Reilly Dep. 18:15-22, 17:25-18:11 (hereinafter "Reilly Dep.")). Looking for a place to purchase snacks and cigars, Plaintiff pulled into two different retail parking lots where the stores where closed. (Bowman Dep. at 15:19-20; 28:14-18, 28:23-29:1; Reilly Dep. at 13:7-10; 15:13-14.) His girlfriend followed him into the first

parking lot, and followed him out, but did not stop with him the second time.  (Bowman Dep. at 27:16 - 29:14.)

Unbeknownst to Plaintiff, Defendant Reilly had been stationed in his car in the first parking lot and observed Plaintiff and his girlfriend enter and leave.  (Reilly Dep., 12:25-13:10). Suspicious of this behavior, Defendant Reilly followed Plaintiff.  (Id. at 13:19- 14:25).  Plaintiff entered the second parking lot and pulled into a space in front of a closed Wawa convenience store.  (Bowman Dep. at 30:15-18; Reilly Dep. at 25:8-9).  Defendant Reilly pulled in behind Plaintiff with his lights on.  Id.  Defendant was given Plaintiff's driver's license and returned to his car.  (Bowman Dep. at 33:16-18.)  It appears that no further documentation was sought by Defendant.[1]  Plaintiff moved around in his car after Defendant returned to his squad car. (Bowman Dep. at 33:19-20).

Defendant next returned to Plaintiff's car, where Plaintiff was speaking on his phone. (Bowman Dep., 34:17-18).  Defendant Reilly asked Plaintiff to end the phone call and then seized the phone when Plaintiff did not comply.  (Id. at 34:18-20; Reilly Dep., 47:21-25). Defendant then ordered Plaintiff to place his hands on his head, with his fingers interlocked, and to exit the vehicle.  (Bowman Dep. at 34:17-22; Reily Dep. at 47:23-25).

Plaintiff testified at his deposition that when he placed his hands on his head, Defendant grabbed his hands and "very violently" tried to pull Plaintiff from the car.  (Bowman Dep. at 35:8-11).  Plaintiff said he was in an awkward position and that his hands slipped off his head

---

1. Neither Bowman's nor Reilly's depositions indicate exactly what Reilly said to Bowman to induce him to produce his license, or whether additional documentation was referenced.  Bowman says Reilly "ask[ed] for [his] information," (Bowman Dep. at 33:16-18), while Reilly could not remember whether Bowman handed him his license "before or after [he] asked for it." (Reilly Dep. at 28:17-18).

4

and he fell back into his seat. (Id. at 35:11-13). Defendant ordered Plaintiff to put his hands back on his head and Plaintiff complied. (Id. at 35:13-15). Defendant admitted at his deposition that he observed Plaintiff was having difficulty getting out of the car with his hands on his head. (Reilly Dep. at 49:11-20). He had never before seen someone having difficulty in getting up in this manner. (Id.) Plaintiff testified Defendant was acting aggressively throughout the time Plaintiff was exiting the vehicle. (Bowman Dep. at 36:14-18).

Plaintiff stood up with his hands on his head a second time. (Id. at 35:17-18). After he did so, he was turned so that he faced the car. (Id. at 38:2-5). Defendant next pushed into him which caused Plaintiff's back to bow and his torso to become wedged into the pillar of the open car door. (Id. at 38:4-18). Plaintiff said his pants began to fall down, and that he removed one hand from his head to pull his pants up. (Id. at 38:12-16). As Plaintiff explained:

> I'm facing the car, but I'm bent all the way back, bowed, because he's pushing me into the car with my hands interlocked on my head. And my pants are falling down, so I'm losing my footing, I'm trying to stand straight up to relieve the pressure off of my back, and to just be able to stand up right. . . I tried to pull them up . . . He pushes me harder, wedging my arm into like my seat, and my other hand is still on my head.

(Id. at 38: 5-12). When asked whether he pushed against Defendant with his body, Plaintiff stated: "I was kind of pushing back because he was pushing me into the car. . . the only way for me to stand up right was to push back a little bit to relieve the pressure off of my back." (Id. at 73:14-18).

While Plaintiff and Defendant were standing in the opening of Plaintiff's car door, Officer King arrived on the scene.[2] About the same time, Plaintiff testified Defendant began yelling "No, don't do it," and that Plaintiff responded, "I'm just trying to pull my pants up." (Bowman Dep., at 37:21-23). Plaintiff explained he was not then able to move his arm from his side because Defendant had him pinned to the door pillar. (Id. at 63:23-64:13.) Plaintiff testified that his hand was visible at all times and that at no point did he reach his hand into his pants where his hand would not be visible. (Id. at 40:8.) "Within . . seconds" from when Plaintiff initially lowered his hand from his head, Defendant spun him and threw him to the ground. (Id. at 40:1-5). Plaintiff landed on his back and was tackled by Defendant. (Id.) Defendant then shot Plaintiff in the neck. (Id.) At no point did Defendant ask Plaintiff if he had a gun or say anything about a weapon. (Id. at 68:24-69:11).[3]

---

2.      Pennsylvania State Police Officer King testified in his deposition that at the time he pulled into the parking lot in his unmarked police car, Plaintiff and Defendant Reilly were standing face to face in the door-opening of Plaintiff's car. (Doc. No. 16, Ex. 3, King Dep., 18:21 - 19:7 (hereinafter "King Dep.")). King testified that when he pulled into the Wawa parking lot, he "probably put [his car's police] lights on" to alert everyone to his presence, but he does not remember. King stated that after he pulled into the lot, he saw Defendant Reilly and Plaintiff "struggling." (Id. at 19:5-7). King parked his car and exited it immediately, at a distance of about 20-30 feet from the parties. (Id. at 21:13-18). By the time King ran to the parties, and was standing next to them, they were on the ground. (Id. at 22:20-23:7). King testified he approached facing Defendant Reilly, rather than from behind Defendant, so that if Defendant Reilly had looked he would have seen King approaching. (Id. at 30:2-22). King stated he came to Defendant Reilly's side intending to "assist him with gaining control of Mr. Bowman," when he observed Defendant Reilly draw his weapon and continue to yell at Plaintiff. (Id. at 29:16-22). Defendant Reilly then fired one shot at Plaintiff. (King Dep., at 37:12-19). Defendant Reilly testified he was not aware of King's presence before pulling the trigger. (Reilly Dep., at 70:2-6).

3.      Defendant Reilly's version of events differs from Plaintiff's on several points. Defendant Reilly says he "assist[ed]" Plaintiff from the car, and that after Plaintiff was standing facing the car, Defendant Reilly began to pat him down but that Plaintiff "with his butt pushed me back and yanked his hands down in one quick movement." (Reilly Dep. 50:25 - 54:2). Defendant Reilly

## III. SUMMARY JUDGMENT STANDARD

Granting summary judgment is an extraordinary remedy. Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 770 (3d Cir. 2009). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. Liberty Lobby, 477 U.S. at 247-49.

In ruling on a motion for summary judgment, the Court must view the evidence, and make all reasonable inferences from the evidence, in the light most favorable to the nonmoving party. Chambers v. School Dist. of Philadelphia Bd. of Educ., 587 F.3d 176, 181 (3d Cir. 2009); Bouriez, 585 F.3d at 770. Whenever a factual issue arises which cannot be resolved without a

---

testified that when Plaintiff pulled his hand down, it "went straight into his. . . pant." (Id. at 55:11-12). Defendant Reilly said he then tried to get a hold of Plaintiff's arm and pin him to the car. (Id. at 55:14-19). Defendant Reilly testified he began yelling at Plaintiff, "Don't do it," and "cursed at him a couple of times," but he did not remember if Plaintiff said anything to him at that moment. (Id. at 56:5 - 57:5). Defendant testified Plaintiff did not say anything threatening. (Id.) Since the Court must view the facts in the light most favorable to Plaintiff at the summary judgment stage, the Court will adopt Plaintiff's version of these events for purposes of the analysis.

credibility determination, at this stage the Court must credit the nonmoving party's evidence over that presented by the moving party. Liberty Lobby, 477 U.S. at 255.

**IV.    DISCUSSION**

    **A.    Excessive Force**

In Count I, Plaintiff alleges Defendant Reilly deprived Plaintiff of his constitutional rights as guaranteed by 42 U.S.C. § 1983, which provides that:

> Every person who, under color of any statute, ordinance, regulation,
> custom or usage of any State. . . subjects, or causes to be subjected,
> any citizen of the United States. . . to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law.

Plaintiff alleges Defendant Reilly violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution not to be subjected to unreasonable use of excessive force. (Doc. No. 1, at 6, ¶24).

"A claim for excessive force under the Fourth Amendment requires a plaintiff to show that a seizure occurred and that it was unreasonable." Rivas v. City of Passaic, 365 F.3d 181, 198 (3d Cir. 2004) (citing Curley v. Klem, 298 F.3d 271, 279 (3d Cir. 2002) (hereinafter "Curley I")). "A seizure occurs whenever an officer restrains the freedom of a person to walk away." Rivas, 365 F.3d at 198. In this case, it is clear that Plaintiff was seized. See Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999) ("Abraham obviously was 'seized' when shot. As the Supreme Court recognized in Tennessee v. Garner,. . . there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment."). The primary question, then, is whether the seizure was reasonable.

An excessive force claim,

> must be evaluated from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, and must embody the allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are often tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.

Rivas, 365 F.3d at 198. "The inquiry must turn on objective reasonableness, meaning that the standard is whether the police officer's actions were objectively reasonable in light of the facts and circumstances facing the officer, regardless of the officer's intent or motivation." Rivas, 365 F.3d at 198 (internal citation and quotation marks omitted).

"Deadly force will only be considered reasonable . . . when it is necessary to prevent escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." Abraham, 183 F.3d at 288. The court must consider the totality of the circumstances to determine the amount of force permissible to effectuate the arrest. Abraham, 183 F.3d 289. Factors to consider in determining whether the use of force was objectively reasonable are:

1. The severity of the crime at issue;
2. Whether the suspect is actively resisting arrest or attempting to evade arrest by flight;
3. Whether the action takes place in the context of effecting an arrest;
4. Whether the force applied was of such an extent as to lead to injury;
5. Whether the suspect is violent or dangerous;
6. The duration of the action;
7. The number of persons with whom the police must contend at one time;
8. Whether the suspect poses an immediate threat to the safety of police officers or others; and
9. The possibility that the suspect may be armed.

McCracken v. Freed, 2006 WL 83452, *5 (E.D. Pa. 2006) (citing Sharrar v. Felsing, 128 F.3d 810, 821-22 (3d Cir. 1997) (abrogated on other grounds)); Rivas, 365 F.3d at 198 (citing

the <u>Sharrar</u> factors); <u>Smith v. Addy</u>, 2009 WL 2400262 (3d Cir. 2009) (slip copy) (citing the

<u>Sharrar</u> factors).[4]

The relevant law can be summarized as follows: "Giving due regard to the pressures

faced by the police, was it objectively reasonable for the officer to believe, in light of the totality

of the circumstances, that deadly force was necessary to prevent the suspect's escape, and that

the suspect posed a significant threat of death or serious physical injury to the officer or others?"

<u>Abraham</u>, 183 F.3d at 289.

Reasonableness of the force used is generally an issue of fact for the jury.  <u>Rivas</u>, 365

F.3d at 198; <u>Abraham</u>, 183 F.3d at 290 ("Since we lack a clearly defined rule for declaring when

conduct is unreasonable in a specific context, we rely on the consensus required by a jury

decision to help ensure that the ultimate legal judgment of 'reasonableness' is itself reasonable

and widely shared.").  However, "Defendants can still win on summary judgment if the district

court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use

of force was objectively reasonable under the circumstances."  <u>Abraham</u>, 183 F.3d at 290

(quoting <u>Scott v. Henrich</u>, 39 F.3d 912, 915 (9th Cir. 1994)).  The Third Circuit, in discussing

this statement of the Ninth Circuit, cautioned as follows:

> [This statement] does not resolve the fundamental issue: how
> willing should district courts be to find a use of force objectively
> reasonable assuming a given set of undisputed facts?  To the
> extent that there is a general answer to this question, it depends
> on a court discerning differences in degree familiar in evaluating
> factual questions on summary judgment.  As the Supreme Court
> said in <u>Anderson</u>, "the judge's function is not himself to weigh the
> evidence and determine the truth of the matter but to determine
> whether there is a genuine issue for trial."  477 U.S. at 249.

---

4       The factors listed are a compilation of factors noted in all three cases.

Abraham, 183 F.3d at 290.

Turning to the facts in this case, the parties dispute issues of material fact, in particular the reason Plaintiff pressed against Defendant Reilly upon exiting the car, the placement of Plaintiff's hand before he was shot, and whether Defendant Reilly was aware that a fellow officer arrived during the incident and before deadly force was used. Defendant acknowledges this dispute but asserts that even viewing the facts and all reasonable inferences in the light most favorable to Plaintiff, it was still objectively reasonable, as a matter of law, for Defendant Reilly to use deadly force. (Mem. Law Supp. Def. Mot. (Doc. No. 16), 4 (hereinafter Doc. No. 16)). The Court is not persuaded that this assertion warrants summary judgment in Defendant's favor.

The facts of the case must be considered under the Sharrar factors. McCracken v. Freed, 2006 WL 83452, *5 (E.D. Pa. 2006) (citing Sharrar v. Felsing, 128 F.3d 810, 821-22 (3d Cir. 1997) (abrogated on other grounds)); Rivas, 365 F.3d at 198 (citing the Sharrar factors). First, the severity of the crime at the moment of the confrontation was low: Plaintiff was stopped because Defendant Reilly suspected Plaintiff was driving under the influence of a prohibited substance. This suspicion was corroborated by the strong scent of marijuana Defendant detected emanating from Plaintiff's vehicle. Second, based on Plaintiff's version of the facts, he was neither actively resisting arrest nor attempting to evade arrest by flight – Plaintiff pressed against Defendant Reilly only in an effort to remain standing because Defendant Reilly was "violent" and "aggressive" in handling him, which caused pressure on Plaintiff's midsection. Since Defendant Reilly caused Plaintiff to press against him, it is reasonable to infer Defendant Reilly knew why Plaintiff made physical contact with Defendant. Third, the action here took place while Defendant was effecting an arrest. Although Defendant Reilly did not inform Plaintiff he

11

was under arrest, Plaintiff testified he understood that this "was the procedure to get arrested." (Bowman Dep., 35:4-5).

Fourth, the force applied here was of such an extent as to lead to injury – Defendant Reilly shot Plaintiff point-blank in the neck, placing Plaintiff in a life-threatening condition. Fifth, Plaintiff was not known to be violent or dangerous: at best, Defendant Reilly noted that he learned Plaintiff's license was suspended and believed Plaintiff was high from marijuana use. There is no evidence that Plaintiff had a history of violence, or that Defendant Reilly perceived him to be a violent or dangerous individual. Sixth, the duration of the action here was very short – both Plaintiff and Defendant testified that the period of time between Plaintiff exiting his car and Defendant Reilly shooting him was mere seconds. Seventh, Defendant Reilly had to contend with only one person, Plaintiff.

The eighth and ninth questions – whether the suspect posed an immediate threat to the safety of police officers and the possibility that the suspect was armed – appear to be the two most sharply contended factors. Defendant asserts that, even accepting Plaintiff's version of the facts, it was objectively reasonable for Defendant Reilly to think Plaintiff was reaching for a gun given Plaintiff's behavior. (Doc. No. 16-1, at 10). Defendant points to the Fourth Circuit's reasoning in Anderson v. Russell that "an officer is not required to see an object in the suspect's hand before using deadly force." 247 F.3d 125, 131 (2001). Defendant also asserts that this case is analogous to the facts in Anderson and Reese v. Anderson, wherein the Fourth and Fifth Circuits held it was objectively reasonable for police officers to use deadly force in response to individuals disobeying commands and reaching their hands in a manner the officers interpreted as reaching for a weapon. 247 F.3d at 131-132; 926 F.2d 494, 500-01 (1991).

For the purposes of summary judgment, however, the Court must accept Plaintiff's

assertion that he did not reach into his pants and that his hand was at all times visible.  This fact

distinguishes both <u>Anderson</u> and <u>Reese</u>, where the plaintiff and plaintiff's decedent were shot

after they moved their hands out of the officer's sight line.  247 F.3d at 128 (describing how

Anderson, who had been stopped by off-duty police officers as he exited a mall after a patron

informed an officer that Anderson looked like he was carrying a gun, obeyed police commands

to get on his knees and raise his hands, but then reached his hand behind him, into his back

pocket, to turn off his walkman radio, and was then shot); 926 F.2d at 496 (describing how

plaintiff's decedent Crawford, who had been involved in a high-speed car chase following a

robbery, initially obeyed a police command to raise his hands, but then dipped his shoulder and

lowered his hand so that it was behind the car door and was not visible to the defendant officer,

and was then shot).[5]

Plaintiff also told Defendant Reilly, in response to Defendant's command: "don't do it,"

that he was merely pulling up his pants.  (Bowman Dep. at 37:21-23).  In neither <u>Anderson</u> nor

<u>Reese</u> did the individuals shot explain the reason for their actions to the police.  247 F.3d at 128

("While Anderson initially complied with the order to raise his hands, he later lowers them,

---

5.      Even if Plaintiff's hand was concealed, it is not clear that Defendant would be entitled to
summary judgment.  In a recent decision by Judge Lawrence Stengel of this Court, a defendant
police officer was denied summary judgment where he pursued a man on foot who had fled from
another officer after a Terry frisk, ordered the man to raise his hands after he was stopped, and
shot the man after he allegedly refused to show his hands.  <u>Pelzer v. City of Philadelphia</u>, 2009
U.S. Dist. LEXIS 78554, at *14-18 (E.D. Pa. 2009).  The Court reasoned: "Even assuming
Pelzer made no sudden movement toward Officer Burton and accepting the defendants' version
of all other facts, Officer Burton is not entitled to summary judgment on this claim.  Pelzer's
rocking movements and refusal to show his hands would be a failure to submit to the officer's
authority, but falls short of establishing the basis for believing Pelzer was a safety threat.  <u>Id</u>. at
*17, n.15.

without explanation to the officers, in an attempt to reach into his back left pocket to turn off his Walkman radio."); 926 F.2d at 496 (indicating that the noise of the police siren made communication difficult, but in response to each of the officer's yelled commands Crawford nodded in understanding and/or replied with words that looked like "'okay' or 'alright,'" but that Crawford continued to disobey the commands). Furthermore, Defendant Reilly did not display his weapon until moments before he shot Plaintiff. In Anderson and Reese, the individuals shot were held at gun point by the defendant officers throughout the confrontation. 247 F.3d at 128; 926 F.2d at 495-96.

Finally, viewing the facts in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, a logical inference arising from Officer King's testimony is that Defendant Reilly would have been aware of his presence before the shooting occurred. As discussed supra, at footnote 2, Officer King parked his car, likely with lights flashing, twenty to thirty feet away from the parties and was at Defendant Reilly's side before Defendant Reilly pulled the trigger.[6] Defendant Reilly's awareness of the presence of another officer suggests to some extent that Plaintiff was not a threat to the safety of the officers. Under these circumstances, at this stage of the proceedings, it was not objectively reasonable for Defendant Reilly to think Plaintiff was armed and that he posed a threat to the safety of the officer.

A reasonable jury could find, based on all of the above factors and evidence, that excessive force was used by Defendant Reilly in shooting Plaintiff. Because genuine issues of material fact remain, and because a jury could conclude, upon resolving those issues, that

---

6    Plaintiff asserted at the February 9, 2010 hearing that a jury could infer based on these facts that Defendant Reilly was aware of Officer King's presence upon his arrival. At the summary judgment stage, this assertion is a reasonable inference.

Defendant Reilly's use of force was unreasonable, Defendant Reilly's motion for summary judgment on this issue will be denied.

**B.    Qualified Immunity**

Defendant asserts that even if Plaintiff can establish a claim for excessive force under 42 U.S.C. § 1983, his claim is barred by qualified immunity.  (Doc. No. 16, at 11).  The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, – U.S. –, 129 S. Ct. 808, 815 (2009) (internal citation and quotation marks omitted).  Qualified immunity is an "immunity from suit rather than a mere defense to liability," and so is "effectively lost if a case is erroneously permitted to go to trial."  Id.

In determining whether qualified immunity applies, courts must consider two inquiries:

> [1.] Taken in the light most favorable to the party asserting the injury,  do the facts alleged show the officer's conduct violated a constitutional right? . . .
>
> [2.] [I]f a [constitutional] violation could be made out. . . the next, sequential step is to ask whether the right was clearly established. This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition.

Saucier v. Katz, 533 U.S. 194, 201 (2001) (abrogated by Pearson, 129 S.Ct. at 818, in that the sequence set forth in Saucier as mandatory was held to no longer be mandatory, so that the judges of the district courts and courts of appeals are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first").  In determining whether a right is clearly established, the dispositive inquiry is, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation

15

he confronted. . . If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Saucier, 533 U.S. at 202.

The Third Circuit has held that "whether an officer made a reasonable mistake of law and is thus entitled to qualified immunity is a question of law that is properly answered by the court, not a jury." Curley v. Klem, 499 F.3d 199, 211 (3d Cir. 2007) (hereinafter "Curley II"). In answering this question, the court must consider the "totality of the circumstances." Id. However, "the jury 'determines the disputed historical facts material to the qualified immunity question.'" Id. at 210 (quoting Carswell v. Borough of Homestead, 381 F.3d 235, 242 (3d Cir. 2004)). "A decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis." Curley I, 298 F.3d at 278.

Defendant asserts that even if all inferences are drawn in Plaintiff's favor and there is a conclusion that Defendant Reilly's use of force was objectively unreasonable, the evidence of record still establishes that "a reasonable officer would have believed he was acting lawfully during his encounter with Plaintiff, and that Defendant is therefore entitled to qualified immunity at the summary judgment stage." (Doc. No. 16, 12).

As discussed above, whether Defendant Reilly's use of force was reasonable is a question properly submitted to the jury. Unresolved issues of material fact remain. A reasonable jury could find that Defendant Reilly's use of force was not objectively reasonable. Furthermore, in this case, attempting to resolve the second prong of the qualified immunity test without resolving the first prong would be inappropriate, since whether the right is "clearly established" is to be determined "in light of the specific context of the case," the exact contours of which are

16

unresolved here.  <u>Saucier</u>, 533 U.S. at 201.  <u>See</u> <u>Pearson</u>, 129 S.Ct. at 818 (consigning the order

of the qualified immunity questions to the "sound discretion" of the trial court); <u>see also</u> <u>Pelzer</u>,

2009 U.S. Dist. LEXIS 78554, at *34, n.22 (holding, post-<u>Pearson</u>, that because there is a

"genuine question as to whether an objectively reasonable officer would believe it was necessary

to shoot an individual" considering the facts of that case, the court was unable to determine

conclusively that defendant did not violate plaintiff's rights, and therefore summary judgment

was inappropriate).[7]

---

[7]     As noted, Defendant asserts that even viewing the facts in the light most favorable to
Plaintiff, "a reasonable officer presented with the circumstances that Corporal Reilly faced could
have believed his conduct was lawful," and that the Court can therefore grant summary judgment
in favor of Defendant on the second prong of the <u>Saucier</u> test, even assuming Plaintiff can satisfy
the first prong.  Defendant points to <u>Baldridge v. City of Santa Rosa</u>, 1999 WL 66141, *7-8
(N.D. Cal. 1999), where the court held that an officer who shot a handcuffed, unarmed man
whose hands remained visible and who never reached for his pockets, waistband or under his
shirt, was entitled to qualified immunity.  <u>Baldridge</u>, however, is clearly distinguishable from the
instant case: the officer there confronted a suicidal individual who had removed several firearms
from his home, and who had left a suicide note read by the officer indicating that he intended to
kill himself and would "take any police officer with him who tried to stop him."  <u>Id</u>. at *8.

    Here, if the jury concluded that Plaintiff fell against Defendant because of Defendant's
handling, that Defendant heard Plaintiff's explanation, that Defendant was aware of Officer King
upon his arrival, and that Plaintiff's hands were visible at all times and not within his pants, then
this case is clearly distinguishable from those cases where courts have held there was no
excessive force as a matter of law.  <u>See</u> supra I. Excessive Force, p 7-9 (distinguishing Plaintiff's
facts from those of <u>Anderson</u> and <u>Reese</u>).  Moreover, courts within this circuit have held that
shooting an individual whose hands are visible, among other factors, may constitute use of
excessive force.  <u>See</u> <u>Remillard v. City of Egg Harbor City</u>, 424 F. Supp. 2d 766, 770 (D. N.J.
2006) (holding that because, among other issues, the parties disputed whether Plaintiff's
decedent's hands were visible at the time he was shot, "a reasonable jury could find. . . that
excessive force was used by Defendant . . . in fatally shooting [Plaintiff's decedent]"); <u>Pelzer</u>,
2009 U.S. Dist. LEXIS 78554, at *33-34 (reasoning that because material facts were in dispute,
including whether Plaintiff's decedent's hands were visible at the time he was shot, that "a
reasonable jury could find that [Defendant] was not objectively reasonable in believing [the
decedent] presented an imminent, life-threatening danger," and that Defendant committed a
constitutional violation).  However, whether Defendant's actions here fall within the factual
parameters of these cases, such that Defendant may be found to have been on notice that his

Because "disputed historical facts material to the qualified immunity question" remain, Curley II, 499 F.3d at 211, summary judgment in favor of Defendant here is inappropriate.

### III.     State Sovereign Immunity

Defendant Reilly, as an employee of the Pennsylvania State Police, is protected by Pennsylvania's sovereign immunity statute, which provides:

> Pursuant to section 11 of Article I of the Constitution of
> Pennsylvania, it is hereby declared to be the intent of the General
> Assembly that the Commonwealth, and its officials and employees
> acting within the scope of their duties, shall continue to enjoy
> sovereign immunity and remain immune from suit except as
> the General Assembly shall specifically waive the immunity.

1 Pa. Cons. Stat. Ann. § 2310.  Officials and employees of the Commonwealth enjoy sovereign immunity when "acting in the scope of their duties" except as specifically waived by the General Assembly.[8]  Defendant contends that sovereign immunity prevents Plaintiff from pursuing the state tort claims in Counts II-IV.

The scope of employment is determined according to the Restatement (Second) of Agency § 228, which provides that an individual is acting within the scope of his employment if his actions were: (1) of the kind and nature he was employed to perform; (2) substantially within authorized time and space limits; (3) actuated, at least in part, by a purpose to serve his employer; and (4) if force is intentionally used by the employee against another, if the use of

conduct violated Plaintiff's rights, cannot be determined at this stage of the case.

8       The General Assembly has waived sovereign immunity in nine narrow circumstances enumerated in 42 Pa. Cons. Stat. § 8522(b), none of which apply in this case.  Defendant Reilly is susceptible to liability only if he was acting outside the scope of his employment.

force was expectable by his employer.[9]  See Wesley v. Hollis, 2007 U.S. Dist. LEXIS 41562, *48 (E.D. Pa. 2007) (citing Brumfield v. Sanders, 232 F.3d 376, 380 (3d Cir. 2000)) (citing the Restatement (Second) of Agency as the law in Pennsylvania).  Questions of whether an individual acted within the scope of his or her employment are ordinarily questions of fact for the jury to decide.  Strothers v. Nassan, 2009 WL 976604, *8 (W.D. Pa. 2009) (citing Orr v. Willaim J. Burns Int'l Detective Agency, 12 A.2d 25, 27 (Pa. 1940)).

Here, Defendant Reilly has satisfied the second element of the standard, as he was within the authorized time and space of his employment when he confronted Plaintiff.  The Court must next consider whether, viewing the facts in the light most favorable to Plaintiff, there is a genuine issue of fact as to whether his actions satisfy the first, third and fourth elements.

In considering these three prongs, courts have found that the conduct of an officer may be so excessive that he is not acting within the scope of his employment.  See, e.g., Revak v. Liebrum, 2008 WL 4858291 (W.D.Pa. 2008) (denying summary judgment where plaintiff alleged that the use of excessive force during a traffic stop was not the kind of force the defendant state troopers were employed to perform).  The court in Strothers, supra, noted that many decisions discussing scope of employment concern whether an employer is vicariously liable for an employee's actions, but reasoned that the analysis would be equally applicable to immunity cases.  2009 WL 976604, *8, *10.  The court then examined a Pennsylvania Superior Court decision involving a shooting by an off-duty police officer and reasoned:

---

9       As one district court explained regarding use of force questions: "[t]he extent to which the intentional use of force is properly characterized as an act within the scope of one's employment depends on the extent of an employer's *expectation* of force rather than on the extent of an employer's *authorization* of force."  Strothers v. Nassan, 2009 WL 976604, *8 (W.D. Pa. 2009).

> Where . . . the employee commits an act encompassing the use of
> force which is *excessive and so dangerous as to be totally without
> responsibility or reason*, the employer is not responsible as a matter
> of law.  If an assault is committed for personal reasons *or in an
> outrageous manner*, it is not actuated by an intent of performing the
> business of the employer and is not done within the scope of
> employment.

Id. at *9 (citing Lunn v. Yellow Cab Co., 169 A.2d 103 (1961)) (emphasis added).

Courts frequently consider scope of employment within the context of a sovereign

immunity defense in cases involving excessive force by prison guards.  The court in Wesley

reasoned: "[w]here the alleged intentional tort was *unprovoked, unnecessary or unjustified by

security concerns* or penological goals, courts have ruled that such conduct does not, as a matter

of law, fall within the scope of employment."  2007 U.S. Dist. LEXIS 41562 at *50–51 (citing

Robus v. Pennsylvania Dep't of Corrections, 2006 U.S. Dist. LEXIS 49943 (E.D.Pa. 2006))

(emphasis added).

Here, Plaintiff presents a genuine issue of material fact as to whether Defendant's actions

were  actuated by an intent to serve his employer and whether the use of force was expectable by

his employer.  As discussed above, if a jury were to adopt Plaintiff's version of the facts and

find, among other factors, that Plaintiff pressed against Defendant as a result of Defendant's

conduct, that Plaintiff's hands were visible at all times, and that Defendant was aware another

officer arrived on the scene before the shooting, the jury could find that Defendant Reilly used

excessive force.  Under these facts, a jury could also find that the use of force was "excessive

and so dangerous as to be totally without responsibility or reason," and find that the third

element of the Restatement test has not been met.  Strothers, 2009 WL 976604, at *9.  Likewise,

a jury could find Defendant Reilly's actions were "unprovoked, unnecessary or unjustified by

security concerns," and that the fourth element of the Restatement test also has not been met.

Wesley, 2007 U.S. Dist. LEXIS 41562 at *50–51.  Accordingly, Defendant's Motion for

Summary Judgement based upon sovereign immunity will be denied.


**V.  CONCLUSION**

In sum, Defendant Reilly's Motion for Summary Judgment will be denied on all counts.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES BOWMAN, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 09-1322 |
| | : | |
| v. | : | |
| | : | |
| CORPORAL ROBERT F. REILLY, | : | |
| et al., | : | |
| | : | |
| Defendants. | : | |

## ORDER

AND NOW, this 4th day of March, 2010, upon consideration of Defendant's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 and accompanying Memorandum of Law (Doc. No. 16), Defendant's Statement of Undisputed Facts (Doc. No. 16-2), Plaintiff's Answer Opposing Summary Judgment (Doc. No. 20), Plaintiff's Answer to Defendant's Statement of Undisputed Facts (Doc. No. 21), Defendant's Reply to Plaintiff's Answer (Doc. No. 22), and the arguments made by counsel at the February 9, 2010 hearing, and after a complete and independent review of all pleadings, motions and exhibits, which include deposition testimony and other discovery submitted by the parties, it is **ORDERED** that Defendant's Motion (Doc. No. 16) is **DENIED** in its entirety.

BY THE COURT:

_____
JOEL H. SLOMSKY, J.